# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2026

Lyle W. Cayce
Clerk

No. 25-20258

The Juneau Group, L.L.C.,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Vendera Management Holdings, L.L.C., *doing business as* Vendera Resources; VR4-Moria; BOKF National Association, *doing business as* Bank of Texas, L.P.,

*Defendants—Appellees/Cross-Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-2856

Before King, Higginson, and Duncan, *Circuit Judges*.

King, *Circuit Judge*:

A dissolved Louisiana LLC brought this suit against three defendants for alleged misappropriation of trade secrets and breach of contract. The defendants moved for psychiatric examination of and appointment of *guardian ad litem* for the LLC's sole member and for judgment on the pleadings based on the LLC's lack of capacity. The LLC moved to strike the motion for psychiatric examination and appointment of *guardian ad litem* and

moved to file under seal certain portions of its response to that motion. The defendants also sought leave to file motions for attorneys' fees.

The district court denied the motion for psychiatric examination and appointment of *guardian ad litem*; denied the motion to strike; granted the motion to file under seal the LLC's response; *sua sponte* moved under seal various other filings; granted the motion for judgment on the pleadings; and denied the request for leave to file attorneys' fees motions. The LLC appeals the judgment on the pleadings and asks us to certify a question to the Louisiana Supreme Court. The defendants cross-appeal the *sua sponte* sealing order and the denial of leave to file attorneys' fees motions.

For the following reasons, we AFFIRM the judgment on the pleadings; DENY the request to certify a question to the Louisiana Supreme Court; AFFIRM the denial of leave to file attorneys' fees motions; VACATE the sealing order; and REMAND for the district court to perform the balancing test required by this court's precedents when sealing court filings.

## I

## A

Plaintiff, The Juneau Group LLC ("Juneau Group"), was a limited liability company formed under Louisiana law on July 30, 2018. It had as its sole member Jacob Juneau and registered as a foreign LLC in Texas on August 9, 2018. The LLC was voluntarily dissolved by affidavit in Louisiana on April 21, 2024, and its registration terminated in Texas on May 23, 2024.

In 2020, then still in existence, the Juneau Group became interested in acquiring certain onshore drilling assets ("Moria Assets") that BP sought to divest. To that end, Mr. Juneau had frequent meetings with BP representatives, gaining valuable insight into BP, its corporate politics, and

its concerns about the Moria Assets. This, he says, allowed him to "design[] an acquisition strategy and bid amount/structure tailored to BP's priorities, the Moria Assets' particularities, and the Juneau Group's capabilities and needs."

The Juneau Group then approached Bank of Oklahoma ("BOKF") to obtain financing. They entered into a confidentiality agreement, which authorized BOKF to use the information shared by the Juneau Group solely to "evaluat[e] or implement[] possible financing" by BOKF. And under that agreement, the Juneau Group shared sensitive bid-strategy information for the Moria Assets with BOKF representatives, including one Jeffrey Hawes.

Two months later, BP informed the Juneau Group that another bidder had won the bid. That bidder was Vendera Resources, which had also obtained financing from BOKF. According to the Juneau Group, Vendera Resources was "a major client of" BOKF, and Hawes—the Juneau Group's contact at BOKF—would later leave BOKF to become Vendera Resources' CFO. Mr. Juneau confronted Hawes, who allegedly "all but admitted that he sent this [sensitive] information to Vendera [Resources] and that he anticipated that litigation would follow."

On July 30, 2024, positing that "Hawes and/or other Bank of Oklahoma representatives must have informed Vendera of all or part of the Juneau Bid Strategy," the Juneau Group—now dissolved—brought this suit against Vendera Resources, VR4-Moria, L.P. (an affiliate of Vendera Resources; together, "Vendera"), and BOKF (collectively, with Vendera, "the defendants"), alleging misappropriation of trade secrets and breach of contract.

No. 25-20258

**B**

The proceedings in the district court were, to say the least, messy. Following two turnovers of the Juneau Group's counsel and a discovery dispute, Vendera moved for psychiatric examination of and appointment of *guardian ad litem* for Mr. Juneau under Federal Rules of Civil Procedure 35(a) and 17(c).[1] In the motion and the two supplements thereto, Vendera detailed Mr. Juneau's turbulent past, including his criminal history, mental health history, use of prescription psychiatric medications, and litigation history. Suggesting that this suit is a continuation of Mr. Juneau's past erratic behavior, Vendera claimed that a psychiatric examination was necessary for the jury to understand "the current status of Mr. Juneau's mental health" to properly evaluate his testimony.

The Juneau Group responded in three ways. First, it filed a motion to strike the Rule 35 motion, arguing that Vendera's motion contained confidential information, such as history of mental health issues and prescription medications, in violation of the district court's protective order.[2] Second, it filed a motion for leave to file under seal its response to the Rule 35 motion. And third, it responded to the Rule 35 motion.

As relevant here, the motion for leave to file under seal sought narrow relief, requesting permission to file under seal seven specified pages of Mr. Juneau's deposition transcript and portions of the response to the Rule 35 motion that refer to those pages. It did not seek to seal any of Vendera's motion, supplements, or attachments. Presumably, the Juneau Group believed that the motion to strike would address those documents.

---

[1] For simplicity's sake, we refer to this motion as the "Rule 35 motion."

[2] The motion to strike contained artificial-intelligence-hallucinated caselaw, which the district court described as "an attempt to perpetrate a fraud on th[e] [c]ourt."

4

No. 25-20258

While those motions were pending, BOKF moved for judgment on the pleadings under Rule 12(c), and Vendera joined in the motion. In it, BOKF argued that the Juneau Group lacked capacity to sue under either Louisiana law or Texas law because it dissolved prior to initiating the suit. The Juneau Group's response did not dispute the lack of capacity. Instead, it "request[ed] the [c]ourt permit Plaintiff opportunity to cure the deficiency," given that the Juneau Group was actively seeking reinstatement in Louisiana state court. It urged the court to deny the motion or, alternatively, abate the proceedings while the Juneau Group sought reinstatement.

The district court held a hearing on these motions. It first addressed the Rule 12(c) motion. The Juneau Group again urged the court to stay the proceedings so that it can complete the reinstatement process in a Louisiana trial court. Nevertheless, the district court granted the motion, relying on intermediate Louisiana state court decisions holding that retroactive reinstatement to pursue inchoate claims is unavailable to LLCs dissolved by affidavit.

Then, after summarily denying the Rule 35 motion and the motion to strike, the district court turned to the Juneau Group's motion to file under seal. When asked if he opposed the motion, Vendera's counsel conceded that, "We don't really care, Your Honor." But the counsel noted that much of the to-be-sealed documents were public information, such as Mr. Juneau's criminal history, and expressed his desire "to be sensitive to the fact that . . . courts are supposed to be open." However, after the Juneau Group's counsel noted that Mr. Juneau's prescription medication is not public information but mentioned in one of those documents, the district court granted the motion, "just for ease. It is dealing with sensitive matters, whether they're public or not." It thus ordered that "the Response [to the Rule 35 motion] and any attachments to that are under seal."

No. 25-20258

The defendants' counsel also orally requested leave to bring attorneys' fees motions, claiming that they "have spent a lot of money on this case." They identified three bases for such motions: 28 U.S.C. § 1927, Rule 11, and inherent powers of the district court. Despite some reservation about "satellite litigation," the district court found "that this litigation has been abusive," and granted them leave to file their motions.

The next day, the district court changed course. In a minute-entry order, it denied the defendants' request for leave to file their attorneys' fees motions. It reasoned that the "basis for dismissal of this action derives solely from legal grounds related to the capacity of Plaintiff to institute this action . . . on July 30, 2024," which "could have been[] supported by a simple public-records search." But the Rule 12(c) motion was not brought until April 24, 2025. So because "all or the vast majority of the fees and costs expended in this litigation could have been avoided by the exercise of prompt, reasonable diligence," it declined to entertain "satellite litigation in this regard."

And in another order, the district court *sua sponte* "determined that filings with respect to the mental health and competency of Jacob Juneau should be maintained under seal." Accordingly, the court ordered the Clerk of Court to seal Vendera's Rule 35 motion, supplements thereto, the motion to strike, the motion to seal, and all responses, replies, and attachments to those filings. The court provided no further explanation.

After the district court entered a final judgment dismissing the case with prejudice, the parties timely cross-appealed. The Juneau Group appealed the dismissal of its claims. BOKF cross-appealed the denial of leave to file an attorneys' fees motion. Vendera joined in BOKF's brief and separately cross-appealed the district court's decision to seal various publicly available information. These issues are taken in turn.

6

## II

This court "reviews a district court's grant of judgment on the pleadings under Rule 12(c) *de novo*." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). A judgment on the pleadings is appropriate when "the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

The Juneau Group's motion to abate is, in effect, a request to stay proceedings. "A district court decision to stay a proceeding is generally reviewed for abuse of discretion." *Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002). "However, to the extent that such a decision rests on an interpretation of law, the review is *de novo*." *Id.*

Applying these standards, we must decide (A) whether the district court erred in concluding that the Juneau Group lacked capacity to initiate the suit and, if it did not err, (B) whether the district court erred in dismissing, rather than staying, the case. As to both, we see no error.

## A

The district court was correct that the Juneau Group lacked capacity to initiate this suit. Under Federal Rule of Civil Procedure 17(b)(3), an LLC's capacity to sue or be sued is determined "by the law of the state where the court is located . . . ."[3] FED. R. CIV. P. 17(b)(3). And under the law of the

---

[3] The Juneau Group incorrectly asserts that Rule 17(b)(2) applies and so we must look to the law of the state of formation—Louisiana. But that rule, by its plain terms, applies only to corporations. *See* FED. R. CIV. P. 17(b)(2). And an LLC is an *un*incorporated association. *See* La. R.S. § 12:1301 ("'Limited liability company' . . . means an entity that is an unincorporated association . . . ."); *Arena IP, LLC v. New England Patriots, LLC*, No.

forum state—Texas—the Juneau Group lacked capacity to initiate the suit for the simple reason that it lacked existence.

"Only a party that actually or legally exists may bring a lawsuit." *Christi Bay Temple v. GuideOne Specialty Mut. Ins. Co.*, 330 S.W.3d 251, 253 (Tex. 2010); *see Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 759 (Tex. 1995) (similar), *disapproved on other grounds by Chilkewitz v. Hyson*, 22 S.W.3d 825 (Tex. 1999). The Juneau Group was voluntarily dissolved on April 21, 2024 and ceased to exist, over three months before it initiated this suit. Because it did not actually or legally exist, it could not bring this lawsuit.

## B

Unable to dispute its lack of capacity, the Juneau Group takes issue with the district court's chosen remedy. Instead of dismissal, it thinks the district court should have abated the case while it seeks retroactive reinstatement in Louisiana state court.[4] Although a retroactive reinstatement in Louisiana may cure the Juneau Group's non-existence under Texas law, *see* TEX. BUS. ORGS. CODE § 1.102, the district court did not abuse its discretion in not staying this case.

## 1

The district court declined to abate this case because it understood Louisiana law to not permit retroactive reinstatement of a dissolved LLC

---

4:23-CV-428, 2023 WL 7222123, at *1 n.1 (S.D. Tex. Nov. 2, 2023) ("[A]n LLC is not a corporation . . . . After all, the fact that an LLC *isn't* a corporation is the whole point of an LLC." (alteration in original) (quoting *Calchi v. TopCo Assocs., LLC*, 676 F. Supp. 3d 604, 610 (N.D. Ill. 2023))); *cf. Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (treating LLCs as unincorporated associations for diversity-jurisdiction purposes). Thus, Rule 17(b)(3) applies.

[4] The Juneau Group never argues that the dismissal should have been *without* prejudice.

under similar situations. In other words, it viewed abatement as futile. We agree.

In determining Louisiana law, we "look to final decisions of the Louisiana Supreme Court." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quoting *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)). Where, as here, "the supreme court has not resolved an issue, then we must make an *Erie* guess and determine as best we can what the Louisiana Supreme Court would decide." *Id.* (citation modified). In doing so, we are mindful that in Louisiana's civilian system, its "Constitution, codes, and statues are of paramount importance to its judges." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850–51 (5th Cir. 2019) (internal quotes and citation omitted). Moreover, "[t]he doctrine of stare decisis, a creature of common law, is alien to the civilian system." *Id.* at 851. Instead, Louisiana courts rely on *jurisprudence constante*, which is established when numerous court decisions agree on a legal issue. *Id.* Still, "we may look to the decisions of intermediate appellate state courts, which provide a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Renwick*, 901 F.3d at 611 (internal quotes and citation omitted).

Start with the text. Dissolution of an LLC by affidavit and its reinstatement are governed by La. R.S. 12:1335.1, which provides:

> A. In addition to all other methods of dissolution, if a limited liability company is no longer doing business, owes no debts, and owns no immovable property, it may be dissolved by filing an affidavit with the secretary of state executed by the members . . . . Thereafter, the members . . . shall be personally liable for any debts or other claims against the limited liability company in proportion to their ownership interest in the company . . . .

> B. The secretary of state shall reinstate a limited liability company that has been dissolved pursuant to this section only upon receipt of an order issued by a court of competent jurisdiction directing him to do so.

La. R.S. 12:1335.1. This dissolution-by-affidavit process offers an alternative, streamlined dissolution process to the lengthier wind-up process, which entails appointing a liquidator, notifying possible creditors and claimants, and filing articles of dissolution with the state secretary of state. *See* La. R.S. 12:1334, 12:1336–40.

Missing from La. R.S. 12:1335.1 is any mention of the retroactive effect of the reinstatement. That silence, in our view, is intentional. Chapter 22 of Title 12 of the Louisiana Revised Statutes governs limited liability companies. And in several instances, Chapter 22 specifically provides—and even mandates—that retroactive effect be given to an LLC's existence. For example, under La. R.S. 12:1308.2, an LLC whose articles of organization have been revoked for failure to file an annual report for three consecutive years can be reinstated, provided it meets certain requirements. La. R.S. 12:1308.2(A), (C). And that reinstatement "*shall* be retroactive . . . as though the revocation had not occurred." La. R.S. 12:1308.2(C)(2) (emphasis added). Likewise, if an LLC fails to designate and maintain a registered office or a registered agent for ninety consecutive days, its articles of organization may be revoked by the state secretary of state. La. R.S. 12:1363(A). But it can be revived, and if so, that reinstatement too "shall be retroactive . . . as though the revocation had never occurred." La. R.S. 12:1363(E). Similarly, La. R.S. 12:1310.1 requires that an LLC's "existence *shall* be retroactive to the date of acquisition of an interest in . . . immovable property" if that properly was acquired on the LLC's behalf before the LLC could be issued a certificate of organization. La. R.S. 12:1310.1.

Conspicuously, though, La. R.S. 12:1335.1 lacks that retroactivity clause. But if the Louisiana legislature wanted to permit, or even require, retroactive reinstatement, it clearly knew how. That it did not do so in La. R.S. 12:1335.1 is telling.

Louisiana courts agree with us. In *In re Reinstatement of S&D Roofing*, the Louisiana Fifth Circuit Court of Appeal conducted the same statutory analysis and arrived at the same conclusion: "[I]n [the] broader context of the chapter governing limited liability companies . . . La. R.S. 12:1335.1's silence on the matter of retroactivity appears intentional." 202 So. 3d 177, 180 (La. App. 5 Cir. 9/22/16). Moreover, construing a near-identical corporate-law statute using the same statutory-interpretation method, the Louisiana Fourth Circuit held that "reinstatement under 12:142.1(B) should be given prospective effect only."[5] *Robertson v. Weinmann*, 782 So. 2d 38, 42 (La. App. 4 Cir. 2/21/01).

In addition to that statutory silence, Louisiana courts also seek "further guidance from case law addressing the analogous matter of reinstatement of corporations previously dissolved by affidavit." *S&D Roofing*, 202 So. 3d at 181. And that caselaw provides relevant "considerations of public policy in determining whether reinstatement is proper and whether it should be given retroactive effect." *Id.* at 185. Of particular importance is "what shareholders knew prior to dissolution." *Id.* So if shareholders were aware of a legal claim prior to dissolution but still chose to dissolve by affidavit rather than undergo the traditional wind-up process prior to initiating the lawsuit, Louisiana courts have disallowed

---

[5] La. R.S. 12:142.1 has since been replaced by La. R.S. 12:1-1404. Still, given the near identity of language between La. R.S. 12:1335.1. and La. R.S. 12:142.1, decisions interpreting the latter are instructive in interpreting the former. *See S&D Roofing*, 202 So. 3d at 185. *Compare* La. R.S. 12:1335.1, *with* La. R.S. 12:142.1.

retroactive reinstatement to pursue that claim.[6] *See id.*; *Gendusa v. City of New Orleans*, 635 So. 2d 1158, 1163 (La. App. 4 Cir. 2/25/94), *writ denied*, 642 So. 2d 1296 (La. 9/23/94) (mem.) ("There is no correlative public policy and no statutory provision to protect a sole shareholder, in possession of all relevant information concerning his corporation's inchoate claim, from the loss of that right through his own voluntary dissolution of the corporation by affidavit.").[7]

Here, the Juneau Group was aware of the facts giving rise to its claims before dissolution but did not pursue them, so retroactive reinstatement is inappropriate. In October 2021, Mr. Juneau confronted Mr. Hawes, who allegedly "all but admitted that he sent [confidential bid strategy] information to Vendera." And yet two-and-a-half years later, Mr. Juneau dissolved the Juneau Group by affidavit, forgoing the formal liquidation process. Months later still, Mr. Juneau finally filed this suit. So because Mr. Juneau knew of the claims the LLC had against the defendants when he chose

---

[6] There are two narrow carve-outs, neither of which is relevant here. First, if the shareholders initiated a suit *before* the dissolution, retroactive reinstatement has been permitted to continue to pursue that claim. *See In re Reinstatement of Venture Assocs., Inc. of La.*, 906 So. 2d 498, 503 (La. App. 1 Cir. 2/11/05) (affirming retroactive reinstatement "because the lawsuit was pending prior to the effective date of the dissolution"). Second, if the entity dissolved both via the liquidation process and by affidavit, Louisiana courts have permitted retroactive reinstatement. *See In re Islander Shipholding, Inc.*, 715 So. 2d 7, 11 (La. App. 5 Cir. 4/15/98).

[7] *See also Krebs, Lasalle, Lemieux Consultants, Inc. v. G.E.C., Inc.*, 197 So. 3d 829, 833 (La. App. 5 Cir. 7/27/16) (affirming dismissal of a dissolved corporation's suit because "KLL, Inc. was aware of its inchoate claims against G.E.C., Inc." but still "chose to voluntarily dissolve itself by affidavit and avoid the liquidation procedure"); *Leader Buick, GMC Trucks, Inc. v. Weinmann*, 841 So. 2d 34, 38 (La. App. 4 Cir. 2/19/03) (affirming dismissal because "the shareholders knew of the claims the corporation had against the defendants when they chose to dissolve the corporation by affidavit," and thus, the corporation's "claims against the defendants were extinguished").

to dissolve the LLC by affidavit without pursuing them, its "claims against the defendants were extinguished." *See Leader Buick*, 841 So. 2d at 38.

The Juneau Group counters with three unpersuasive arguments. *First*, relying on *In re Reinstatement of Southern Labor Services, L.L.C.*, 142 So. 3d 60 (La. App. 5 Cir. 5/14/14), it argues that "the determination of reinstatement and retroactivity rests with a Louisiana trial court after an evidentiary hearing, not with the district court." True, reinstatement of an LLC dissolved by affidavit can occur only after "a court of competent jurisdiction" issues an order to that effect. La. R.S. 12:1335.1(B). Also true, in such a court, "evidence needs to be presented in order to have a limited liability company reinstated." *S. Labor Servs.*, 142 So. 3d at 63 (vacating the reinstatement of an LLC and remanding for the trial court's failure to "consider[] documentation properly admitted into evidence").

But that case has little bearing in this case. *Southern Labor Services* was decided "on procedural grounds only." *S&D Roofing*, 202 So. 3d at 180 n.2 (citing *S. Labor Servs.*, 142 So. 3d 60). What processes must be followed to seek reinstatement does not undermine the district court's or this court's *Erie* guess—informed by numerous, well-reasoned caselaw—on what Louisiana's substantive law says about retroactive reinstatement. Nor did the district court purport to decide whether the Juneau Group *is* reinstated, only that even if it *were* reinstated, it would likely not be retroactive to save this suit. Indeed, the Juneau Group remains free to seek reinstatement under the processes set out in *Southern Labor Services*.

*Second*, the Juneau Group argues that the above-mentioned cases "are not binding on the Louisiana Third Circuit, the intermediate court of appeals [in] whose district [the] Juneau [Group] is seeking reinstatement . . . ." While that may be true, and the Third Circuit has remained silent on this issue, *Erie* guesses have never been about guessing how a particular sub-

jurisdiction within a state would decide an issue. Instead, federal courts are to "make an *Erie* guess and determine as best [they] can what the *Louisiana Supreme Court* would decide." *Renwick*, 901 F.3d at 611 (emphasis added) (internal quotes omitted). Sure, intermediate appellate courts provide valuable data in that guesswork, but our lodestar remains the state's highest court, not a particular circuit court. And here, the mountain of intermediate state court decisions outlined above, though not binding on that particular circuit, provides a meaningful insight into how the Louisiana Supreme Court would decide.

*Third*, the Juneau Group contends that the caselaw is not sufficient to create *jurisprudence constante*. And in the absence of *jurisprudence constante*, it argues, the court must "proceed according to equity," which requires looking into "what [the LLC member] knew prior to dissolution and for what purpose dissolution and reinstatement are being pursued."

This contention is flawed for two reasons. To start, even if these numerous cases do not amount to *jurisprudence constante*, they "provide a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (internal quotes omitted). The Juneau Group has not directed us to any such persuasive data.

Moreover, we did in fact consider equity and what Mr. Juneau knew prior to dissolution. That consideration led us squarely to the conclusion that the Juneau Group relinquished its claims because Mr. Juneau was aware of facts giving rise to its claims but did not pursue them, choosing instead to dissolve the LLC by affidavit without appointing a liquidator. So equity does not help the Juneau Group here either.

No. 25-20258

## 2

Alternatively, the Juneau Group argues that "the district court applied the wrong state's law on the issue of retroactivity of [the] Juneau[ Group's] Texas claims." The specifics of that argument, however, are less than clear. In its opening brief, the Juneau Group argues that "Texas law provides for retroactive reinstatement of a *foreign limited liability company*." But in its reply, it argues that "Texas law allows for retroactive reinstatement of Texas *claims*." The revival of an entity, of course, is not the same as the revival of a cause of action.

Regardless, both versions of the argument fail. As to the first version—that Texas law allows retroactive reinstatement of a foreign LLC—the Juneau Group points to no caselaw that says an LLC dissolved in its home state can be revived in another state. Indeed, as BOKF put it, to permit such a revival "would leave us with the corporate law equivalent of Schrodinger's cat—a company that is both dead and alive at the same time." We decline to spawn such a creature.

As to the second version—that Texas *claims* can be retroactively revived—that argument is forfeited for failure to argue it below, where it argued only that its *capacity* can be retroactively reinstated under Texas law. *See Rollins v. Home Depot*, 8 F.4th 393, 397 (5th Cir. 2021). And even if we assume that Texas law allows for revival of Texas claims, that does little to rebut the tenet that, under Texas law, "[o]nly a party that actually or legally exists may bring a lawsuit." *Christi Bay Temple*, 330 S.W.3d at 253.

## 3

"Further in the alternative," the Juneau Group asks this court to certify the following question to the Louisiana Supreme Court: "[W]hether a Louisiana limited liability company dissolved by affidavit in accordance with Louisiana statute is entitled to retroactive reinstatement to pursue

claims that arose prior to dissolution but were not filed until after dissolution." We decline to do so.

"The decision of whether to certify a question lies within this court's sound discretion." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 290 (5th Cir. 2012). "The court should exercise that discretion sparingly, certifying only in exceptional cases." *Id.* (citation modified).

To help us channel that discretion, we have "articulated three factors to consider in deciding whether to certify a question." *Guerrera v. United Fin. Cas. Co.*, 161 F.4th 913, 921 (5th Cir. 2025) (internal quotes omitted). They are: (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court. *Id.*

The Juneau Group, however, does not recite, let alone attempt to address, these factors. And that failure means it has not shown that this case is one of those "exceptional cases" in which we would be wise to exercise our discretion to certify a question to the Louisiana Supreme Court. *See FEMA*, 668 F.3d at 290. This is especially so when, as outlined above, there are sufficient sources of state law for us to render an educated *Erie* guess. Moreover, the Louisiana Supreme Court has had an opportunity to take this question up in the corporate-law context but declined to do so. *See Gendusa*, 642 So. 2d 1296 (La. 9/23/94) (denying writ of certiorari). That also counsels against certification. *See Guerrera*, 161 F.4th at 921. Accordingly, we decline to certify the question to the Louisiana Supreme Court.

## III

BOKF lodges a cross-appeal, in which Vendera joins. They argue that the district court erred in denying them leave to file motions for attorneys' fees.

"This court reviews a district court's denial of sanctions for abuse of discretion." *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *CenterPoint Energy Hou. Elec. LLC v. Harris Cnty. Toll Rd. Auth.*, 436 F.3d 541, 550 (5th Cir. 2006) (citation omitted). In the fees context, "an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court." *Bryant*, 597 F.3d at 694 (citation omitted).

Recall that the defendants, noting that they "have spent a lot of money on this case," requested leave to file motions for attorneys' fees under 28 U.S.C. § 1927, Rule 11, and inherent powers of the district court. After initially granting them leave, the district changed course, refusing to entertain "satellite litigation in this regard" because the basis for the dismissal would have been apparent via a simple public-records search and "all or the vast majority of the" costs and fees thus avoided.

The defendants' argument is twofold: The district court erred by denying them leave (1) "based on an erroneous legal premise" and (2) "without adequately addressing [the] Juneau Group's bad-faith conduct." Neither are grounds for reversal here.

They argue that the denial was based on an erroneous legal premise because the Texas Uniform Trade Secrets Act ("TUTSA") "does not condition fee entitlement on whether a prevailing party might have incurred lesser fees through a different litigation strategy; it turns on whether the misappropriation claim was brought in bad faith." *See* Tex. Civ. Prac. &

Rem. Code § 134A.005(1). The fatal flaw in this argument is that, during the hearing, the defendants never raised TUTSA as the basis for attorneys' fees in the district court, raising only § 1927, Rule 11, and the court's inherent powers. So any arguments based on TUTSA are forfeited. *See Rollins*, 8 F.4th at 397. And on appeal, they do not argue that the district court applied the incorrect legal standard as to the other putative bases for attorneys' fees, so we need not reach them. *See id.*

As to the sufficiency of the district court's explanation, while it is not ample, it nevertheless suffices under our caselaw. Admittedly, our cases have diverged slightly on the requisite explanation district courts must supply in denying sanctions. On the one hand, we have vacated a sanctions denial and remanded because a "summary order denying 'all other relief not expressly granted,' which included both attorney's fees and prejudgment interest," was insufficient for us to conduct the required review. *See CenterPoint Energy*, 436 F.3d at 550. On the other hand, we have affirmed an unexplained denial of a § 1927 sanction because we construed that denial as an "implicit[] finding that the . . . parties did not vexatiously multiply proceedings." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 389 n.15 (5th Cir. 2022).

We need not reconcile those cases today because the district court gave us more than a mere summary order. It explained, presumably responding to the defendants' comment that they "have spent a lot of money on this case," that "all or the vast majority of the fees and costs . . . could have been avoided by the exercise of prompt, reasonable diligence." That is sufficient for us to undertake review, which does not show that "no reasonable person could take the view adopted by the trial court." *Bryant*, 597 F.3d at 694 (citation omitted). The district court thus did not abuse its discretion.

No. 25-20258

## IV

Vendera separately cross-appeals the district court's decision to seal publicly available information. [8] We review that decision for abuse of discretion. *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019).

"The presumption of openness is Law 101: The public's right of access to judicial records is a fundamental element of the rule of law." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (internal quotes omitted). "Openness is also Civics 101." *Id.* "The Constitution's first three words make clear that ultimate sovereignty is wielded not by government but by the governed." *Id.* "And because 'We the People' are not meant to be bystanders, the default expectation is transparency—that what happens in the halls of government happens in public view." *Id.* This means "[p]roviding public access to judicial records is the duty and responsibility of the Judicial Branch." *Id.* (citation omitted).

So while the district court retains the "sound discretion" to decide whether to seal public records, in exercising that discretion, "the court must balance the public's common law right of access against the interests favoring nondisclosure." *Vantage Health*, 913 F.3d at 450 (citation omitted). And again, "[u]ndergirding balancing is a *presumption* in favor of the public's common law right of access to court records." *Id.* (emphasis added) (internal quotes omitted).

---

[8] To the extent Vendera appeals the district court's decision to grant the Juneau Group's motion to seal, rather than the *sua sponte* sealing order, Vendera has waived that issue by conceding the motion below. *See Smith v. United States*, 328 F.3d 760, 770 (5th Cir. 2003) ("A party's concession of an issue means the issue is waived and may not be revived.").

19

Reflecting these principles, this court has identified two scenarios in which "a district court abuses its discretion in decisions to seal or unseal documents: failure to identify and apply the proper legal standards, or failure to provide sufficient reasons for its decision to enable appellate review." *Id.* at 450–51 (first citing *United States v. Sealed Search Warrants*, 868 F.3d 385, 396–98 (5th Cir. 2017); and then citing *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848–49 (5th Cir. 1993)).

In *Van Waeyenberghe*, for example, we found abuse of discretion in the district court's decision to seal certain documents because we saw "no evidence in the record that the district court balanced the competing interests prior to sealing the final order." 990 F.2d at 849. "First, the district court made no mention of the presumption in favor of the public's access to judicial records. Second, the district court did not articulate any reasons that would support sealing the final order." *Id.*

Similarly, in *Sealed Search Warrants*, we vacated a sealing order and remanded because we deemed the district court's explanation—that "there is a substantial probability that the investigation will be compromised if the affidavit is unsealed"—"bare." 868 F.3d at 396–97. "While the district court need not conduct an exhaustive assessment," we noted, "it must generally articulate its reasons to support sealing the [documents] with a level of detail that will allow for this [c]ourt's review." *Id.* Put another way, the district court's findings should be "detailed, clear, and specific." *Id.*

The district court contravened both of these precedents. We see no mention of presumption in favor of the public's access to judicial records. We see only *that* it has made its "determin[ation] that filings with respect to the mental health and competency of Jacob Juneau should be maintained under seal," but no reasons therefor. And the record is devoid of any supporting

findings, let alone detailed, clear, and specific ones. That constitutes an abuse of discretion, warranting a vacatur and remand.

To be sure, as the Juneau Group points out, there may be countervailing considerations counseling against unsealing. But those are precisely the kind of considerations the district court was to weigh in the first instance but failed to do so.

## V

For the foregoing reasons, we AFFIRM the dismissal of the Juneau Group's claims; DENY the request to certify a question to the Louisiana Supreme Court; AFFIRM the denial of attorneys' fees; VACATE the order to seal publicly available information; and REMAND for proceedings consistent with this opinion.